UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CROSKEY,

    Plaintiff,

v.

BMW OF NORTH AMERICA, ET AL.,

    Defendants.

                                                /

Case No. 02-73747

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER [136]**

This matter comes before the Court on Magistrate Judge Paul J. Komives's Memorandum Opinion and Order (Magis. Order) of February 18, 2005, regarding Defendant's access to Plaintiff's treating physician for an *ex parte* interview in preparation for trial. Defendant[1] has filed Objections, arguing that the Magistrate erred as a matter of law on two grounds: First, in finding that the Health Insurance Portability and Accountability Act ("HIPAA") preempts Michigan law regarding physician-patient privilege, and second, in finding that a "qualified protective order" under HIPAA should contain requirements not expressly provided by the HIPAA regulations.

This Court has reviewed the Magistrate's Opinion and Order, the parties' moving papers, the briefs of *amici curiae* Michigan Hospital Association, Michigan Trial Lawyers Association, and ProNational Insurance Company, and the relevant law.

---

[1]Defendants BMW of North America (BMW NA) and Bayerische Motoren Werk Aktiengesellschaft (BMW AG) are singularly referred to as "Defendant."

The Court finds that the Magistrate did not err on the first ground. As to the second ground, however, the Magistrate erred by ruling that a "qualified protective order" under HIPAA requires specific notice to a plaintiff's counsel of a proposed *ex parte* meeting, and plaintiff's consent. For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Defendant's Objections, and thereby REVERSES IN PART and AFFIRMS IN PART the Magistrate's Order.

**I.   Standard of Review**

Rule 72(a) of the Federal Rules of Civil Procedure governs this Court's review of a Magistrate Judge's decision in nondispositive matters such as this. That rule states, in relevant part, "The district judge to whom the case is assigned shall consider . . . objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

**II.   Discussion**

45 CFR § 164.512(e)(1) provides in part as follows:

Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

Thus, as the Magistrate correctly noted, there are three ways in which Defendant may comply with 45 C.F.R. § 164.512(e)(1): "[O]btaining a court order," "sending a subpoena or discovery request where plaintiff has been given notice of the request," or "sending a subpoena or discovery request where reasonable effort has been made to obtain a qualified protective order." (Magis. Order 19.)

The Magistrate was also correct in construing Defendant's proposed stipulation to a protective order as falling under Section 164.512(e)(1)(ii)(B). Under that section, a protective order must meet the requirements of Section 164.512(e)(1)(v), which provides,

> For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
>
> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

It seems clear that based on this language, a qualified protective order such as Defendant proposed must meet two criteria: First, it must prohibit Defendant from disclosing Plaintiff's protected information beyond the purposes of this litigation, and second, it must mandate that Defendant must return or destroy the protected information after the litigation has concluded.

The Magistrate found, however, that "in light of HIPAA's distaste for informal discovery," two additional requirements are necessary: "[Defendant] needs not only to comply with 45 C.F.R. § 164.512(e)(1), but also to give notice to plaintiff's counsel of the desire to conduct an *ex parte* meeting with plaintiff's treating physician and to give notice to the treating physician that such a meeting is not required." (Magis. Order 20.) Thus, the Magistrate's order met *and exceeded* the required criteria. "If plaintiff permits an ex parte meeting and if the treating physician is willing to conduct an ex parte meeting with defense counsel, plaintiff may be deemed to have waived his rights under HIPAA and the ex parte meeting may be conducted." (*Id.* (emphasis in original).)

Arguing for adoption of the Magistrate's Opinion and Order, Plaintiff contends that the additional requirements imposed by the Magistrate were appropriate, based on "the structure of 45 C.F.R. § 164.512(e)(1)(i) and (ii)":

> The definition of a 'qualified protective order' in subsection (v) relates to the order that the requesting party must attempt to secure under subsection (ii) in addition to sending out 'a subpoena, discovery request, or other lawful process.' The definition of a 'qualified protective order' in no way limits the terms of the 'order' under subsection (i).

(Pl.'s Br. in Opp'n to Def.'s Objections 13-14.) The Magistrate made explicit, however, that "I will construe [Defendant's] statement as a request for protective order as set forth in 45 C.F.R. § 164.512(e)(1)(ii)(B)." (Magis. Order 19.) Since the Magistrate rested his finding on Part (ii), it is irrelevant whether the definition of "qualified protective order" in Section (v) limits the definition of "order" in Part (i). Plaintiff's argument is misplaced.

Plaintiff further argues,

> Even if HIPAA did not require adequate notice to Plaintiff, the Magistrate was clearly within his discretion to include this condition in a protective order. It is well accepted that a magistrate judge h[a]s broad discretion to regulate the

4

> terms and conditions of a protective order entered under Fed. R. Civ. P. 26(c). *Pro Billiards Tour v. R.J. Reynolds Tobacco Co.*, 187 F.R.D. 229, 230 (M.D. N.C. 1999). Before issuing a formal discovery request or seeking a subpoena, Defense counsel had already violated HIPAA by attempting to schedule secret meetings with several of Plaintiff's treating doctors. Notice is not only required, but a proper safeguard given counsel's actions.

(*Id*. at 14.) Plaintiff's reasoning is also flawed here, based again on the fact that the Magistrate rested his decision on Part (ii)(B). That Part does not require that a defendant actually *get* a qualified protective order, but permits the release of information based only on the assurance that the defendant "has requested a qualified protective order from [a] court or administrative tribunal." 45 C.F.R. § 164.512(e)(1)(iv)(B). Thus, Part (ii)(B) is an inappropriate means for the exercise of judicial discretion against a particular defendant. In fact, the Magistrate's Opinion and Order leaves little doubt that the additional requirements were not discretionary, but, in the Magistrate's view, required by law.

Defendant argues that the requirement of notice to Plaintiff's counsel will have the practical effect of obstructing, or precluding entirely, *ex parte* interviews, and that it is "entitled under principles of fundamental fairness to investigate the health condition of Plaintiff without interference of and without disclosing its work product to his counsel." (Def.'s Objections to Magis. Order 18.) Defendant maintains that Plaintiff should not be permitted to use the patient-physician privilege "as both a sword and shield." Similarly, *amicus curiae* Michigan Hospital Association describes the requirements as being "analogous to sending a boxer into the ring wearing a blindfold!" (MHA Br. 2.)

These concerns are legitimate. Indeed, as *amicus curiae* ProNational Insurance Company goes to great lengths to point out (ProNational Br. 3-8.), they provide the basis for Michigan law, which would give defendants relatively unfettered access to a plaintiff's

5

physician based on the goal of open and fair discovery. *See Damako v. Rowe*, 475 N.W.2d 30 (Mich. 1991). This is exactly what led to the Magistrate's correct conclusion that Michigan law is less stringent than HIPAA, and is therefore preempted. Preemption does not extinguish the possibility, however, that the policy rationale behind Michigan law might fit neatly within the HIPAA framework.

The problem with 45 C.F.R. § 164.512(e) is that it does not explicitly mention *ex parte* interviews. In fact, the requirements of a "qualified protective order" include "the return to the covered entity or destruction of the protected health information (including all copies made)," which suggests that this Section may have been intended only to cover *documentary* evidence. Given this ambiguity, the Magistrate found that additional requirements were necessary to further the goals of HIPAA.

As to the first additional requirement, notice to Plaintiff's counsel, the Magistrate was in error. Notice to a plaintiff's counsel would render superfluous Parts (ii)(A) and (ii)(B) of the disputed statute. The use of the term "or" between them makes clear that these were intended to be alternate provisions, a fact that the Magistrate correctly recognized. (Magis. Order 19.) Part (ii)(A) deals with notice to the plaintiff, while Part (ii)(B) deals with a qualified protective order from a court. Notice to a plaintiff's counsel would defeat the entire purpose utilizing Part (ii)(B) rather than Part (ii)(A), since under the Magistrate's holding, Plaintiff not only must be notified, but must also consent to the *ex parte* interview taking place. To allow Plaintiff to block the interview would be inconsistent with HIPAA's structure, and would impede Defendant's access to evidence. For these reasons, 45 C.F.R. § 164.512(e)(1)(ii)(B), as defined by Section 164.512(e)(1)(v), does not require specific notice

to Plaintiff's counsel before Defendant conducts an *ex parte* interview with Plaintiff's treating physician. Nor does it require Plaintiff to consent to such an interview.

As to the Magistrate's second additional requirement, notice to the treating physician that he or she need not answer Defendant's questions, the Magistrate was not in error. Because a physician cannot be compelled to speak *ex parte* with defense counsel, this limited requirement does nothing to infringe on Defendant's ability to gather evidence in preparation for trial. Unless, of course, Defendant's counsel would mislead the witness, either affirmatively or by omission. The Court will not assume such a motive. Plaintiff's treating physician may choose to speak with Defendant or may choose not to, but this decision should be made with full knowledge of the circumstances.

The rules discussed above comport with a recent case recently to have addressed this very issue. In *Bayne v. Provost*, 359 F.Supp.2d 234 (N.D.N.Y. 2005), the court made the following rulings:

> Defendants are granted a Qualified Protective Order and Authorization to interview [Plaintiff's nurse] about the relevant events in this litigation and [Plaintiff's] medical history and condition. The Defendants shall draft for this Court to execute a Qualified Protective Order and Authorization that incorporates . . . [the following terms]: (1) the Defendants are prohibited from using or disclosing the protected health information for any purpose other than this litigation; (2) the Defendants are required to either return or destroy the protected information at the end of the litigation; (3) the document shall be captioned Qualified Protective Order and Authorization and shall be used exclusively for the interview of [Plaintiff's nurse]; and (4) there shall be a recitation on the document's face in bold letters that the purpose of the disclosure is not at the request of the patient, however, he has been put on notice of this order, and that the purpose of the information is to assist the Defendants in defense of a lawsuit brought by the Plaintiff . . . .
>
> [I]f the Defendants comply with all of these requirements and eventually choose to call [Plaintiff's nurse] as a witness, they shall not be precluded from conducting subsequent private discussions with [that party] in preparation for

> trial testimony and the contents of such further discussions need not be disclosed . . . .
>
> [T]he Defendants shall advise [Plaintiff's nurse] that this Qualified Protective Order and Authorization does not compel her to participate in an interview against her wishes nor to occur outside the presence of her attorney if she wishes to have one present.

*Id.* at 243.

In light of the above discussion, the *Bayne* court's requirements make sense. This Court therefore holds that under 45 C.F.R. § 164.512(e)(1)(ii)(B), a qualified protective requires neither specific notice to Plaintiff's counsel nor Plaintiff's consent before Defendant may interview Plaintiff's treating physician *ex parte*. It does, however, require clear and explicit notice to Plaintiff's treating physician both as to the purpose of the interview and to the fact that the interview is not required. Only by complying with these restrictions, and the requirements made explicit under the statute, may Defendant conduct an *ex parte* interview with Plaintiff's treating physician.[2]

---

[2] Based on Defendant's previous attempt to interview Plaintiff's treating physician *ex parte* without consent, Plaintiff petitioned the Magistrate for a court order prohibiting any further contact. Because the Magistrate held as a matter of law that Defendant needed Plaintiff's consent to conduct an *ex parte* interview of Plaintiff's treating physician, he found such an order unnecessary: "I decline to enter an order prohibiting defense counsel from scheduling ex parte meetings . . . as BMW might do so by complying with my foregoing conclusions." (Magis. Order 23.)

Despite this Court's rejection of the Magistrate's findings as to notice and consent required for a "protective qualified order" under HIPAA, the Court finds that sanctions are not appropriate in this case, and will therefore not issue an order prohibiting Defendant from contacting Plaintiff's treating physician.

Although it is clear to the Court that Defendant never obtained Plaintiff's consent to conduct *ex parte* interviews—and in fact should reasonably have known that Plaintiff objected to such contacts—Defendant was acting in accordance with a reasonable interpretation of the law. Defendant claims that the meeting, which was scheduled on January 5, 2005, was arranged "because Plaintiff had noticed Dr. Keoleian's deposition for

**III. Conclusion**

For the reasons discussed above, this Court GRANTS IN PART and DENIES IN PART Defendant's Objections, and thereby REVERSES IN PART and AFFIRMS IN PART the Magistrate Judge's Opinion and Order of February 18, 2005.  The Magistrate erred to the extent that he required Defendant to notify Plaintiff's counsel and obtain consent for *ex parte* meetings pursuant to a Qualified Protective Order under 45 C.F.R. § 164.512(e)(1)(ii)(B).

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: November 10, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2005  by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager

---

January 10, 2005.  *Ex parte* interviews of a plaintiff's treating physicians are common in the state of Michigan.  Pursuant to Michigan law, defense counsel routinely meet with treating physicians where an allegedly injured party . . . [files] a personal injury claim."  (Def.'s Objections to Magis. Order 2.)

    The Court sees no reason to disrupt the Magistrate's ruling that sanctions are not necessary here.  Defendant may conduct *ex parte* interviews with Plaintiff's treating physician in accordance with the Court's foregoing conclusions.

9